IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : |
| RICHARD WALKER | : DKT. No. 0207 2:18CR00087-001 |

### RICHARD (ROB) WALKER'S SENTENCING MEMORANDUM

## I. INTRODUCTION

Richard (Rob) Walker is a forty-five (45) year old adult male, residing in Hicksville, Nassau County, New York. He has been married to his wife, Elizabeth (Gaynor) Walker, for sixteen (16) years. Mr. Walker submits this sentencing memorandum to support an authorized basis for a "non-guideline" sentence or a sentence of mitigation and/or a downward departure, specifically a probationary sentence.

The plea agreement is non-binding but instructive, and, along with a modest mitigation (and/or departure) or an appropriate application of the law, justifies and warrants a non-guideline sentence. The Court maintains the discretion and authority to impose a non-guideline sentence, as the defendant believes is just and proper, after a review of all facts and circumstances of the case and of Mr. Walker.

## II. THE PLEA, THE PRESENTENCE REPORT, AND THIS MEMORANDUM

On May 29, 2019 Mr. Walker pled guilty before Your Honor to Count One of a Two Count Indictment. Mr. Walker admitted to a violation of 18 USC 1512 (c) (2). The parties agree that the Base Offense Level is a 14. The Government suggested a 2 point enhancement for Abuse of Position of Trust, bringing the Total Level to a 16. By

1

demonstrating Acceptance of Responsibility, the Adjusted Offense Level would fall 3 points and bring the range of Imprisonment to 12-18 months. The defense reserved its right to challenge the 2 point enhancement. It is the defense's position that the Total Base Offense Level is a 14 less 2 points for Acceptance of Responsibility bringing the Adjusted Offense Level to a 12 and a range of Imprisonment to 10-16 months.

The August 14, 2020 Presentence Report (PSR) calculates the sentencing guidelines at an Adjusted Offense Level 13 based on a 3-level adjustment for Acceptance of Responsibility (including the Government's motion under §3E1.1(a) and (b)). During the presentence interview, Mr. Walker accepted full responsibility in the instant offense, pled guilty in a timely fashion and stands prepared to accept the Court's sentence. Respectfully, the defense submits that a reduction for acceptance of responsibility is appropriate.

On September 11, 2020, the defense filed an Objection to the PSR. The defense objected to the 2 point adjustment suggested in the plea agreement by the Government and later in the PSR by the Probation department. Additionally, the defense objected to Probation's suggestion that the Court engage in an upward departure from the guidelines for certain Additional Conduct. The defense will not repeat the arguments made in our September 11, 2020 letter and would respectfully request it be incorporated by reference. The defense also requests the right to argue each and every allegation of Additional Conduct should this Court find it necessary.

The PSR details the offense as well as Mr. Walker's personal and professional history. This memorandum is not intended to duplicate the materials in the PSR, rather, the purpose herein is to highlight the specific factors which bear most directly upon the

issue of determining the most appropriate sentence. As the guidelines are "advisory," it is respectfully submitted that a non-guideline sentence, i.e., one of probation, is appropriate.

## III. THE *ADVISORY* GUIDELINES CONSTITUTE ONLY ONE OF MANY CONSIDERATIONS IN SENTENCING

Title 18 U.S.C. 3553(a) provides:

The court shall impose a sentence sufficient, <u>but not greater than necessary,</u> to comply with the purposes set forth in paragraph (2) of this subsection (emphasis supplied). The court, in determining the particular sentence to be imposed, shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed;

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner;

The directive of U.S. v. Booker, 543 US 220, 125 S.Ct. 738, 2005 WL 50108, 2005 U.S. Lexis 628 (2005) and § 3553(a) make clear that the sentencing courts may no longer uncritically apply the guidelines and only depart in the "unusual" case or in the "out of heartland" case. Federal judges have the flexibility to apply their experience and wisdom to fashion sentences in accordance with the well-recognized pre-guideline principle of "individualized sentencing."[1] Under §3553(a) a sentencing court must consider the "history and characteristics of the defendant."

---

[1] The Seventh Circuit in its post Booker interpretation U.S. v. Demeree, 459 F 3d 791, 795 (7th Cir. 2006) held that the "choice of sentence, whether inside or outside the guideline range, is discretionary."

3

Subsequent to Booker, the United States Supreme Court decided Gall v. United States, 552 U.S. 38, 2007. In Gall, the Court rejected an appellate rule that requires "extraordinary" circumstances to justify a sentence outside the sentencing guidelines range. The Court makes clear that so long as the District Court considers the §3553(a) factors and supports an outside guidelines sentence with a rationale supported by the record, the imposed sentence should stand.

Once all the factors are properly considered, the just and appropriate sentence is one that is sufficient, but not greater than necessary. 18 U.S.C. §3553(a).

## IV. FACTORS SUPPORTING A NON-GUIDELINE SENTENCE FOR MR. WALKER

***Background***. Rob Walker respectfully requests that this Court impose a sentence of probation based on the following factors and considerations.

Rob is a forty-five (45) year old male who currently resides in Hicksville, New York with his wife of sixteen (16) years, Elizabeth. Rob and Elizabeth enjoy a strong and loving marriage despite the strain that Rob's arrest and guilty plea have placed on their relationship.

Rob grew up in his parent's family home in Hicksville, New York. He is the oldest four siblings, with two sisters and a brother. He and his siblings remain in close contact and have a close relationship to this day. Rob also remains close with his mother, Rose Marie, who continues to reside in the house Rob grew up in. Rob's father, John, died suddenly after suffering a heart attack in 1999 at the age of fifty-two (52). Prior to his passing, Rob and his father shared a very-close relationship and his death was a monumental loss in Rob's life.

4

After his father's death, Rob, twenty-four (24) at the time, was thrust into the role of father-figure in his household. Rob was called on to play a much larger role in the emotional and financial health of his mother and his siblings. He did so proudly and without hesitation and became someone his immediate family members could rely on for anything. Presently, Rob remains close with his mom and siblings. Each of his loved ones are aware of his arrest and guilty plea and each remain supportive of him.

As the PSR indicates, Rob graduated from Hicksville High School in 1993. After high school Rob attended Long Island University at C.W. Post and graduated in 1997 with a bachelor's degree in Physical Education. Upon graduation, Rob was employed as a "permanent" substitute teacher in the Syosset School District and worked there for approximately a year and a half.

***Rob Walker's Career Path***. In 1998 Rob's career path changed and he took a position as a research assistant with the Town of Oyster Bay (TOB). From that point forward Rob followed in his parent's footsteps and proudly worked as a civil servant in various jobs in local government until he was elected to the New York State Assembly in 2005. During his almost four years in office, Rob represented the Fifteenth Assembly District of Nassau County in the state legislator and by all accounts he did so admirably and with great pride. In 2009 he was appointed Deputy County Executive of Nassau County.

As this Court is all to aware, New York politics, at its highest levels, have fallen into disarray and disgrace in the past five or so years. No one is more aware or more ashamed of this fact than Rob Walker. With that said however, it is important to consider that Rob, and his parents before him, spent their entire careers serving the community they

lived in. Positions in local government such as: Nassau County Commissioner of General Services (Rob's dad, John Walker); Nassau County Legislator (Rob's mom, Rose Marie Walker); and NY State Assemblymen and Deputy County Executive (Rob Walker) were and are positions of service to the citizens of Nassau County. The Walker's did not enter local politics with malintent in their hearts. Just the opposite in fact. The Walker family has served their community proudly for two generations, not for the purpose of self-gain but, instead, for the purpose of serving the people of the community they live and cherish.

In today's political and social climate, and perhaps sometimes rightfully so, the term "career politician" carries with it a negative connotation. A default position that this person must have alternative motives if he or she has spent a lifetime in public service. This is unfortunate and for Rob Walker, is simply not the case. Prior to the circumstances that brings Rob Walker before this Court, he served his community and his constituents with pride and integrity. While this fact in no way dilutes his criminal behavior, Rob Walker is not a career criminal. He is a proud career public servant who committed a criminal single criminal act and has accepted responsibility for this act and stands before Your Honor prepared to accept his sentence.

***Rob Walker's Commitment to Charity Organizaions.*** For most of Rob's adult life, he and his wife have been actively involved in charitable efforts including raising funds and providing resources for different groups and individuals in need.[2] These efforts include:

---

[2] As described in more detail below, accompanying this memorandum are a number of characters letters on Rob's behalf. Letters written by Lolita Skripko, Maria Quarisemo and Peyton Duffner describe some of Rob's dedication to charity work. They are attached hereto as Exhibit A.

A. <u>Elijah Foundation for Autism</u>: Rob coordinated fund-raising efforts and partnership services in the opening of the Elijah School, a school for Autistic adults and children. Rob was honored by the school for his charitable efforts.

B. <u>Sarah Grace Foundation</u>: Sarah was a young girl from Rob's hometown of Hicksville, New York, who tragically died from childhood cancer. Sarah's parents started an organization to raise money for children and their families suffering from cancer. Rob and Liz raised thousands of dollars, collected laptop computers and toys and donated all of it to the foundation for children in need.

C. <u>League of Yes</u>: This organization was formed to provide children with disabilities an opportunity to play sports. Rob brought awareness of the program to Nassau County and was instrumental in the efforts to have a special field built for these athletes to have exclusive use of. For his efforts, Rob was honored as "Man of the Year" by the League of Yes in 2017 and continues to assist the organization in fundraising efforts today.

D. <u>Island Harvest Food Bank, St. Ignatius and Holy Family Church</u>: Rob and Liz have hosted a holiday party every year for their family, friends and colleagues. Attendees of the party are asked to bring non-perishable food, jackets, blankets and toys to be distributed amongst local charitable and religious organizations to replenish their supply during the holidays.

Above is a list of coordinated charitable efforts that Rob has been involved with for many years. Rob and Liz have also spearheaded several local charitable efforts based on events and tragedies that have taken place in his community. For example, after Hurricane Sandy devastated the south shore of Long Island, Rob and Liz collected over

500 toys and coloring books and distributed them to neighborhood children who lost their toys in the flood. Additionally, Rob and Liz coordinated efforts to raise over $4,000.00 for a Hicksville middle school student, Alex Wallace, who is battling leukemia, in order to help his family pay for Alex's treatments.

These examples of Rob's charitable acts are highlighted for the purpose of providing this Court with some insight as to the person Rob Walker is outside of the circumstances for which he stands before Your Honor. These are not efforts that Rob took after he was arrested to curry favor with the Court. Further they are not acts Rob did in his capacity as a public servant or politician or that he sought attention for. Instead, helping his community and those who live in it is a trait imbedded in the character of Rob Walker.

***Rob Walker Was a Government Witness in the Dean and Adam Skelos Trial and provided substantial assistance and cooperation leading to a conviction***. As this Court may be aware, in 2015, Rob Walker testified as a witness for the United States Attorney's Office, SDNY, during the trial of State Senator Dean Skelos and his son Adam Skelos. Prior to his testimony, Rob participated in numerous meetings with the Government's prosecutors and law enforcement agents in preparation for his testimony at trial and testified at the Grand Jury at the Government's request. Further, Rob testified as a government witness at the trial and Rob's cooperation was by all accounts substantial and contributed to the conviction of Dean and Adam Skelos[3].

---

[3] Mr. Walker's assistance and cooperation began in April of 2015 with a meeting at Mr. Walker's house with federal agents. There were 3 subsequent assistance and cooperation meetings that occurred thereafter under a written agreement with Mr. Walker, his then attorney Elizabeth Loconsolo, and the Government. On April 28, 2015 Mr. Walker testified as a government witness before the Grand Jury. These meetings and this testimony were all done voluntarily and without grant of immunity. Later, in 2015 after within counsel was hired and it was reported that Mr. Walker was under a federal investigation, Mr Walker's assistance and cooperation continued but under a grant of immunity. Additional assistance and cooperation meetings occurred and of course the very public testimony at the trail occurred.

In connection with this assistance the Court should be aware that that Mr. Walker's cooperation was significant and useful to the Government. Mr. Walker was truthful, complete and reliable in connection with the information and testimony he provided. In terms of the nature and extent of Mr. Walker's assistance, it was compromised of multiple lengthy meetings and preparation sessions, testimony before a Grand Jury, the reviewing of documents and evidence, and providing trial testimony. Mr. Walker's assistance was not without risk to himself. At the time of said cooperation Mr. Walker was still an active member of the Republican party and was employed in a political position. Mr. Skelos at the time of Mr. Walker's cooperation was one of the most powerful Republicans in the State of New York. Lastly, Mr. Walker's cooperation was timely in that he helped the SDNY prepare, indict and successfully prosecute the case at trial.

As this cooperation occurred in the SDNY and they are not a party to this proceeding, the defense has requested that the Government herein (EDNY) file a 5k1.1 motion or alternatively we have requested that they undertake to ascertain Mr. Walker's assistance so this Court may be properly apprised of same. In the event the Government refuses to submit a 5k1.1 motion or ascertain Mr. Walker's assistance, we would respectfully direct this Court to the Government's September 18, 2018 filing (under seal) made in connection to the defense motion for a Kastigar hearing. This filing confirms the defense' position about the multiple layers of assistance Mr. Walker provided to the Government in connection with the Skelos prosecution.

***__Letters attesting to Rob Walker's personal and professional characteristics__***.

Attached for Your Honor's review and consideration are many letters written by Rob's family, friends and colleagues that detail the man that Rob Walker is and the true remorse he feels for his actions that bring him before the Court. A common theme throughout these letters is Rob's commitment and dedication to his family, his friends, and his community. The undersigned acknowledges that there are many letters on Rob's behalf submitted for Your Honor's consideration. Below, some of these letters are highlighted for the purpose of detailing who Rob Walker is in the eyes and hearts of those who know him best.

Elizabeth Walker[4]

The defense is aware of the inherent bias that family members have when writing character letters. The reality however is that no one can attest to the character of another better than the individual who chose to spend the rest of their life with that person. Additionally, as this Honorable Court is aware, no person shares in the tribulations of a criminal prosecution more than the spouse of the accused. For this reason, the defense begins by respectfully directing Your Honor's attention to the letter of Elizabeth Walker, Rob's wife.

Liz's letter is a synopsis of Rob's family life, his career in public service, the sacrifices his career has required, the damage Rob's arrest has caused his loved ones and the true remorse Rob has displayed. Her letter is a look at all that Rob and Liz have experienced in their sixteen (16) years together and not simply a snapshot of the place in time that brings Rob before this Court. It is for this reason that the defense respectfully

---

[4] The letters summarized below are attached hereto as Exhibit B. The additional letters, not specifically referred to here but equally as important are attached as Exhibit C.

asks that Your Honor begin the consideration of the many character letters submitted on Rob's behalf with Liz's letter.

### The Walker Family

In addition to his wife, the closest people to Rob have always been his immediate family, Rose Marie Walker, his mother, and his siblings, Jennifer, Kristi and Brian. These letters detail the family history, the tragic loss of Rob's father when Rob was twenty-four (24) and the role Rob proudly assumed in the family after John Walker's death. His sisters speak of the strength and leadership Rob showed when the family needed him most and the continued love he has for their husbands and for his nieces and nephews today.

Rose Marie's letter also describes the role Rob took on after his father's death. She refers to him as "the glue that held our family together" and "the go to guy for me, his siblings, and all of our family." Rose Marie's letter is written from the unique perspective that only a mother could have. She writes of Rob's leadership, his kindness, his love of family and public service and of course, of the regret Rob feels for the pain he has caused her and his loved ones. Considering all the good that Rob has achieved in his life, coupled with his actions that bring him before this Court, she remains extremely proud to be is mom.

### The Gaynor Family

Respectfully, the defense directs Your Honor's attention to review are a series of letters from Rob's in-laws, the Gaynor family. These letters, from his mother-in-law, brother-in-law, sister-in-law and two nieces, detail Rob's willingness to always be there

for his family and the level of dependability that his family members, older or younger, have for Rob.

As the letters indicate, Rob has been there to help his family for life's everyday needs like childcare, college move-ins, minor home-improvements, and Easter egg hunts. He is also the one that his in-laws rely on when it comes to dealing with the harsher realities of life. Tragedies such as cancer and chemotherapy, brain aneurysms and the untimely death of loved ones. As his sister-in-law Jaqueline states, "Rob is giving, is extremely generous with his time and truly lives his life serving others."

In addition to sharing Rob's kindness and giving nature, his family's letters also discuss the remorse Rob has shown for his actions and his desire, if giving the opportunity, to mend the trust he has betrayed in those who love him.

<u>Mary Studdert</u>

If there were one letter to sum up who Rob Walker is as a friend, a family member and a public servant, it would be Mary Studdert's letter. Mary is not only a friend of Rob's but also a colleague. She knows his family, followed his career path and watched him become the public servant and the leader he was. Her letter describes the personal attributes Rob shares as a friend and the talents and dedication Rob has for leading the people of Nassau County.

<u>Mary Dwyer-Johnson</u>

Ms. Dwyer-Johnson has known Rob Walker and his family for her entire life (thirty-five years). Her parents and Rob's parents were the closest of friends who raised there children together. As Ms. Johnson proudly indicates, their parents installed "a sense of

community and pride from where we came from" and taught their children to "help others and care for the less fortunate."

Mary's letter describes the profound loss Rob and their family felt after the death of Rob's father and how Rob filled his father's role in his family and their community. Mary's letter describes Rob's commitment to his community as follows: "He has helped countless people through his years as a public servant. He has made our community a better place to live. He has worked effortlessly to build programs for children and the less fortunate. … My town, my friends and my life have been better and blessed because Rob Walker is in it."

<u>Michael Leahy</u>

Michael Leahy and Rob Walker have been close friends for over twenty-five (25) years. Three years ago, Mr. Leahy's life partner passed-away and he sunk into a deep depression. His letter describes how Rob went to his home every day to make sure he got out of bed and started his day. He recalls Rob inviting him to all family and holiday gatherings to make sure he knew he was not alone and that he was loved. Mr. Leahy describes Rob Walker as the "most unselfish person I have ever has the pleasure of knowing."

<u>Brian Hoesl and Kevin Black</u>

Brain Hoesl and Kevin Black have dedicated their lives to law-enforcement with a combined eighty (80) years with the Nassau County Police Department. Both men met Rob Walker while holding leadership positions in their respective police unions and negotiated labor contracts with Rob while he held the position of Deputy County Executive. These letters detail their interactions and relationship with Rob from a

different perspective, as adversaries who gained an immense amount of trust and respect for Rob as a politician, a professional and eventually a friend.

Both men describe being impressed by Rob's dedication to the people of Nassau County and his truthfulness, fairness and willingness to compromise for the better of the citizens he represented. As Mr. Hoesl states, "I greatly respected his ability to balance what was good for the County with the needs of their employees. He was, in my opinion, a very different type of politician who seemed to enjoy the building of friendships along with that of business relationships."

Mr. Black cites to Rob's sincerity when discussing the remorse Rob has shown for his actions. His letter accurately states, "It is the sincerity of his words for the decision he made and the pain and embarrassment he has caused family, friends and supporters that shows how truly remorseful he is."

<u>Karen Dattero and Salvatore Carillo, Jr.</u>

Many of the letters attached for Your Honor's review touch upon the remorse Rob Walker has feels about his actions. Ms. Dattero's and Mr. Carillo's letters are personal accounts of conversations that the authors had with Rob. Both detail the tremendous remorse for what he did and the tremendous sorrow for the pain he has caused he family and friends. As Mr. Carillo explains, "From the beginning, Rob expressed great remorse for his actions. He showed genuine regret, not merely for the criminal or civil liabilities he faced, but for the wrong to which he contributed. … In our many conversations about his troubles, he has never once tried to defend, minimize, or explain away his actions. Nor did he try to shift blame to others."

Ms. Dattero's letter also describes the remorse expressed by Rob to his friend of over twenty (20) years. Ms. Dattero reveals that she and Rob have had many discussions about his actions. According to Ms. Dattero, Rob completely understands what he did was wrong and has never once tried to blame someone else for actions. Again, he has made it clear to someone who has known him for a long time that he feels terrible regret and shame for what he did and the pain it caused.

<u>Norma L. Gonsalves, Daniel J. McCloy and Carnell T. Foskey</u>

These three letters are emphasized because each highlight the dedication and tenacity in which Rob Walker worked for the people of Nassau County. Ms. Gonsalves, a New York State Assemblywoman, speaks of Rob's willingness to work with members of both the Majority and Minority Delegations of the Nassau County Legislator for the betterment of the citizens. By reading her letter in its entirety, one can see that Assemblywoman Gonsalves was not only impressed by Rob's ability to get things done but thankful for his efforts in during so. In her words, "Rob was instrumental in insuring that major improvements were made throughout the length and breadth of Nassau County. … The benefits to the people of Nassau County, both current and future, from his actions are enormous."

Daniel L. McCloy began working for the government of Nassau County in 1986 and throughout his tenure held various high-ranking positions including Nassau County Treasurer and Chief of Staff to the Legislator. Mr. McCloy came to know Rob Walker in 2010 when Rob became Deputy County Executive. His letter touches upon two of Rob's defining projects while serving the people of Nassau County. The first was Rob's work on the antiquated sewer system of Nassau County. This was a project long overdue and

vital to health of Nassau's citizens. Rob undertook this task almost immediately upon joining the County Executive's office and, according to Mr. McCloy, "the turnaround was remarkable."

The second achievement Mr. McCloy details was something felt by all who lived in Nassau County at the time; the rebuilding of its infrastructure (including the sewer system for a second time) after the destruction of Super Storm Sandy. Mr. McCloy's summarizes Rob's dedication as such, "Mr. Walker worked around the clock from the minute Super Storm Sandy hit to insure that the residents of Nassau County could get back to a normal way of life quickly and with minimal financial hardship. His work in this regard cannot be overstated." A review of Mr. McCloy's letter in its entirety provides an overall snapshot of the public servant Rob Walker was outside of the events that lead him to appear before this Court.

Finally, the letter from Carnell T. Foskey, former Commissioner of the Nassau County Department of Parks and Recreation and County Attorney, details the commitment Rob had to bettering the county parks and recreation centers for Nassau's children and adult residents alike. Rob was instrumental in smaller initiatives like rebuilding countless playgrounds throughout the County to monumental ones such as leading the way to building a multi-million dollar state of the art ice rink facility at Eisenhower Park. Mr. Foskey's letter once again speaks of Rob's dedication to the people of Nassau County.

Rob Walker's guilty plea obviously puts an end to his career in public service. While he is all too aware that he has no one to blame but himself for the position he finds himself in, he is no less devastated that his actions cost him a career he loved and he was

good at. The highlighted letters above and the many others attached to this memorandum are personal testaments to the man that Rob Walker is and the love he had for being a public servant. Rob accepts full responsibility for his actions and the consequences those actions have and will bring forth. He is hopeful however that Your Honor will view him for the entirety of the man he is and not solely for the mistake that brings him before this Court.

### *The matter before Your Honor is a severe financial hardship on Rob Walker.*

While the fines and restitution in this matter have yet to be determined by the Court, Rob Walker faces a fine of up to $250,000.00. The potential fines and legal fees coupled with his monthly expenses (as outlined in the PSR) and the loss of any steady employment Rob is able to obtain at this time, has had a severe financial impact on Rob and his wife, Liz. While the extent of this financial impact is not yet completely clear, it is likely Rob's guilty plea and sentence will have a large financial impact for the years' to come.

### *Rob Walker's characteristics lead to the conclusion that he is a very low risk of recidivism.*

As Your Honor is aware, factors such as an individual's age, employment history and prior criminal history are important considerations in the likelihood that an individual will commit additional crimes in the future. Respectfully, we ask the Court to consider these factors in evaluating Rob Walker and determining a just sentence.

As you know, Rob is forty-five (45) years old. He has been married his wife Liz for sixteen (16) years and is a graduate of Long Island University, C.W. Post campus. Rob has spent the entirety of his adult life in public service, working for the Town of Oyster Bay and Nassau County. Prior to this case, his record in public service was

exemplary and he is credited with several major accomplishments including leading the recovery of Nassau County after Super Storm Sandy. He is by all accounts a man that can be counted on by his family, his friends and those he served as a public servant.

Rob Walker is also a Criminal History Category I. Prior to the matter before Your Honor, he had never been arrested for or convicted of a criminal offense. While this fact does not excuse his actions, it is indicative of the fact that he is a man who made a bad decision and not a seasoned criminal. In considering these factors while determining the likelihood of Rob's committing future criminal conduct, it seems clear that he will not return to the criminal justice system.

In addition, Rob certainly poses "no" risk to the public, and the risk of recidivism is virtually non-existent. A lenient sentence is warranted given that there is no need to protect the public from further criminal conduct of the defendant or to deter future crimes. § 3553(a)(2)(B) and (c). See also, United States v. Carmone-Rodriguez, No. 04 Cr. 667, 2005 WL 840464, *5 (S.D.N.Y. April 11, 2005) (below guidelines sentence imposed after considering the low probability of recidivism); Simon v. United States, 361 F. Supp. 2d 35, 48 (E.D.N.Y 2005); United States v. Hernandez, No. 03 Cr. 1257, 2005 WL 1242344, *5 (S.D.N.Y. May 24, 2005).

## V. CONCLUSION

It is clear that Rob Walker's conduct, while criminal, represents a complete aberration from his character. Given the forgoing factors, we submit that this Honorable Court is empowered and justified in imposing a reasonable sentence below the recommended guideline range of incarceration. A sentence of probation will provide adequate punishment and reflect the seriousness of the offense while permitting Mr.

Walker to return to becoming a productive member of society and begin to rebuild his reputation.

Dated: January 15, 2021

                                      Respectfully submitted,

                                      Brian J. Griffin
                                      Attorney for Rob Walker
                                      Foley Griffin, LLP
                                      666 Old Country Road, Ste. 305
                                      Garden City, New York 11530
                                      (516) 741-1110